Bissell, J.,
delivered the opinion of the court.
Most of the difficulties which would have environed this case if its principal questions were res nova have been removed by a recent decision of the supreme court. Wyatt et al. v. Larimer & Weld Ir. Co., 18 Colo. 298.
With some matters discussed in that decision wherein there was a difference of opinion between the majority of this court as then constituted, and it, we have nothing to do. It is here wholly unnecessary to examine the status of a ditch company or of a purchaser of water from it, respecting their relative or their particular estate, title, or property rights either in the ditch, the water or both, save as they are expressed in the alleged contract. The present controversy must be settled by the construction of that contract as affected if at all by the proof concerning the acts of the contracting persons and the happening of the events which are claimed to give rise to the cause of action laid in the bill. The two cases are presented in a radically different way. The first was an appeal from a judgment sustaining a demurrer to a complaint which set up a contract similar in some of its essential features to the one laid in the present bill. In this suit there was a deed executed by the company to Hess containing the conditions. The only concurring particulars in the two cases which must necessarily lead to similar results are to be found in the terms of the deed in the one case and of the contract in the other, and the force and effect to be'given to the language which the parties used. In the former case the court resorted to the definition of a water right contained in the printed forms and contracts used by the Irrigation Company. Here in the language of the deed itself, we find the same aid to interpretation which was held controlling in the judgment of the supreme court in the former litigation. By recurring to the statement of facts it will be observed the company granted to Hess one and one half water right. What a water right was is defined by the following language in the deed: “ that is to say the right to the use of water flowing *507 through the canal of said first party, each water right representing 1 xVtj- cubic feet of water flowing under a weir per second.” Having in view this definition of the term “ water right,” we must recur to a subsequent condition which is in reality the basis of the suit. By a portion of the eleventh condition, it was substantially stipulated that when the company should have sold and have outstanding a number of water rights equal to the estimated capacity of the company to furnish water, and two thirds of those rights should have been fully paid for according to the terms of the contract, then the title to the canal should pass to the holders of the deeds. In this latter particular there is a very wide difference between the Wyatt Qase and the present. In the Wyatt Case the agreement provided that upon the happening of the contingency, to wit, the disposition of a certain amount of water rights, the company should issue to the other contracting party a certain number of shares of stock in the corporation which would be evidence of his right to the control and management of the property.
The condition contained in the present deed is much more persuasive and controlling. It is an absolute agreement between the company and the consumer that upon the happening of the event, to wit, the sale by the company of the full quantity of water which it should be able to furnish and the receipt of pay therefor, the holders of deeds who may have paid the money shall thereupon become the owners of the canal, subject of course to certain other conditions and features of regulation and control which are foreign to the present discussion. Accepting the construction of the supreme court of the words “ estimated capacity to furnish,” we must conclude that if the contingency has happened the purchasers of water by deed from the present appellant have acquired an absolute vested interest in the ditch, have become owners of the property and are entitled to have the scheme provided for carried out and the evidence of that title executed and delivered to them. -The stipulation into which the parties have entered, coupled with the other proof contained in the *508 record, certainly establishes the concurrence of those things which invest the grantees with the right to these evidences of tille. It is agreed the company has sold 1,010 cubic feet of water and have received their pay for more than two thirds of it. The only remaining inquiry is whether the 1,010 cubic feet is coincident with their capacity to furnish water. Its capacity to furnish water is not measured by the inches which would be the quotient of the cubical capacity of the ditch divided by the number of water rights which have been sold, but it is the quotient derived by dividing the total amount of water which the proof shows the company is able to furnish by the number of rights, according to the definition furnished by itself and its own deed which have been disposed of. The same result would be reached if the cubical capacity of the ditch was taken as the dividend in the present case. This suggestion is not made for the purpose of indicating any dissent from the conclusion reached by the supreme court, but to demonstrate that as the event has happened, the plaintiffs are entitled to some relief. There was a very distinct failure of proof on the part of the plaintiff respecting the exact amount of water which the company could furnish; in other words, its capacity to furnish water was not very satisfactorily settled. The plaintiff produced a decree establishing the priority of the company to 761 cubic feet over subsequent appropriators of water from the river. Its relation to all appropriators was not established, at least with reference to the water supply of the river. This was in no manner a measure of its capacity to furnish, because it did not definitely determine the supply. But in another respect, the plaintiff assumed and discharged the burden by the testimony which he produced respecting the inadequacy of the supply from year to year to furnish the various users under the ditch. The evidence in this regard was not very-satisfactory, but the company did not undertake particularly to dispute it, and it may be fairly assumed to have been shown that sufficient water did not flow through the ditch to satisfy the needs of its consumers at the times when water was *509 wanted for irrigating purposes. Witnesses were produced wlio testified respecting the size of the ditch. The engineers were agreed on this subject.
The ditch was large enough at its head to carry, more than the water which had. been sold, but twenty miles from this gate, its dimensions were limited to 671 cubic feet. Whether with a continuous flow this -would have succeeded in discharging the 1,010 cubic feet which the company had sold and give to the purchasers the water to which they were entitled, cannot be exactly and definitely determined. Possibly, if it was run bank full and continuously, the parties might have succeeded in getting what they had purchased. We are unable to conclude what the fact may be about it, but the size of the ditch coupled with the proof respecting the failure to deliver water and the finding of the court that the company had oversold its capacity, is sufficient to entitle us to .conclude that there was a number of water rights outstanding equal to the capacity of the company to furnish water, and when it is conceded that two thirds of them had been paid for, the right of the parties to relief is manifest. Very much discussion has been indulged in by counsel respecting the reservoir rights of the company and the increase which the reservoirs add to the capacity of the canal to furnish water. There are two answers to the contention. The agreement is that the grantees shall become the owners when the company shall have sold its ditch capacity, not when it shall have sold its ditch plus its reservoir capacity. Again there is no proof of the availability of these reservoirs. If it be assumed that the Prince reservoir is so far completed as to be useful in storing water and adding to the supply, this will only add ten water rights to those which ma}r be furnished from the direct delivery of the canal itself. The King reservoir may be dismissed from consideration.' It is not completed and is totally useless without an outlet, which has never been constructed. If the company desired to preserve the control of their canal and dispose of water which could be supplied from this reservoir as a part of their general system and defer the *510 time when the title to the canal should vest in their grantees, it was incumbent upon them to complete it and make it a part of the system which they contend was their original scheme. At present it is no part of it. A very ingenious argument is sought to be constructed upon the computation of the length of time it takes to irrigate eighty acres of land, the number of days which land must be irrigated for successful agriculture, and the number of times the Prince reservoir could be filled and emptied during an entire season. The amount of water which could thus be stored and delivered is estimated at an enormous quantity, which it is insisted should be taken as a part of the estimated capacity of the canal to furnish water. We cannot assent to the theory. In the first place the company has sold and granted a definite water right of one and forty-four one hundredths cubic inches, and has stipulated that there shall be a continuous flow from April until November. It is impossible for them to escape the force of this contract and to relieve themselves of the liability which they have assumed by the contention that water is only necessary for irrigation during a limited period and in a quantity greatly less than that which the company has contracted to deliver. Whatever might be the lights of the company and the purchasers, or of the purchasers themselves under the prorating system which is suggested in the contract, may be left wholly out of consideration. This case does not involve the rights of consumers as between themselves, nor the rights of the .company as a consumer of water under the same ditch and from the same supply. The naked question in this case is whether the grantees are entitled to be treated as the owners of the property, and have a right to insist on the formation of a new company according to the scheme outlined in their deed and to the delivery of stock according to the terms of their contract. We conclude this time has arrived, and that according to the present record the grantees of the company are entitled to compel the organization of the new corporation contemplated by their contract and to the issue of capital stock to them in such proportion ■as their interest warrants.
*511 The decree was not aptly drawn for the enforcement of these rights. It provided that the plaintiff and the other holders of deeds might organize this corporation. Such was not the provision of the contract, nor was the plaintiff on the proof which he offered entitled to that relief. He had the right to insist that the board of directors of the La Junta Company should designate five persons who were the holders of water lights to organize a new company and distribute the stock in accordance with the scheme provided. Beyond that the court could not go. Of course it would be true if the board of directors of the La Junta Company should refuse to execute the mandate of the court, a way could be found by which action could be compelled, or in case of failure the rights of the plaintiffs and his co-grantees could be conserved and protected. The parties are entitled to have the new company organized and to receive their stock.
For the error which the court committed in entering the decree in the form which it did, the case must be reversed and sent back for further proceedings in conformity-with this opinion.

Reversed.